CASE 27—EQUITY—NOVEMBER 27, 1880.

# Fayette National Bank of Lexington, &c., v. Kenney's assignee.

### APPEAL FROM FAYETTE COURT OF COMMON PLEAS.

H. G. & Co. executed their note to appellant for $10,000, and two members of the firm also signed their individual names to the obligation. The firm and the individual members became insolvent, and made assignments for the benefit of their creditors.

1. Appellant had no greater rights or equities than if the individual names of the members of the firm had never been signed to the note.

2. If a creditor of a partnership has received his portion of the firm assets, his hands will be closed, and he must wait until the creditors of the individual members of the firm receive an equal amount with him.

3. If the partnership creditors exhaust the assets of the partnership without being paid in full, the individual creditor must receive a like sum from the individual assets; and when this is done, the individual estate remaining will be distributed between all the creditors, partnership and individual, in proportion to the amount of their debts respectively.

BRECKINRIDGE & SHELBY FOR FIRST NATIONAL BANK OF LEXINGTON.

1. If Northern Bank of Kentucky v. Keiser be not good law, the judgment below is wrong, and the holders of the notes would be entitled simply by the firm signature to come in *pari passu* with Kenney's other creditors; and if it be good law, the very distinction it establishes between firm and individual creditors, as respects their rights against the separate estate, necessitates the conclusion that Kenney's individual name to the paper made it his individual debt.

Fayette National Bank of Lexington, &c., v. Kenney's assignee.

2. By the use of the terms "severally bound" and "jointly bound," the distinction between the two kinds of liability is recognized. (Gassom v. Badgett, 6 Bush, 97; Parsons on Partnership, 485.)

3. The rule in England against double proof in bankruptcy, prior to the act of 1869, has never been recognized in this country, and in England was recognized only in the administration of estates in bankruptcy. The English judges refused to apply it to any other cases. (*Ex parte* Thornton, 3 De G. & J., 454; 6 Beavan, 84.)

GEO. W. DARNALL FOR FAYETTE NATIONAL BANK.

1. I insist that the case of the Northern Bank of Kentucky v. Yeiser has no bearing whatever upon this case. In that case the contest was between partnership creditors as such and the individual creditors. If it is admitted that appellants are only the firm creditors. of H. Gilbert & Co., then the case referred to is conclusive; but we are creditors of S. P. Kenney, by virtue of his individual signature to our notes.

2. Chancellor Walworth, in the case of Wilder v. Keeler (3 Paige, 176), holds that a member of a firm may become bound as indorser or security for the firm, in addition to his partnership liability, and' such individual liability will entitle the creditor to make double proof against the partnership assets and against his individual estate on the same claim. (Smith's Mercantile Law, 79.) The same rule applies in American bankrupt courts. (6 Blatch. F. C. C., 180; 2 Bankrupt Reg., 121.)

3. Equity will not marshal securities to the prejudice of a creditor entitled to a double fund, when the funds arise from contract. (Logan v. Anderson, 18 B. Mon., 120; 10 Bush, 326; 13 *Ib.*, 20.)

M. C. JOHNSON AND C. H. STOLL FOR APPELLEE.

1. The decision of the court in the Northern Bank v. Keiser has been the law of Kentucky for sixteen years. To overturn that decision now would unsettle the distribution of thousands, perhaps millions of dollars, and create enormous litigation.

2. A note given by a firm is the obligation of all the partners, and of each other. It is the several as well as the joint obligation of each of them.

3. It is the boast of equity that there is no *bark* so tough that it cannot be penetrated in order to get to the substance, to the real facts and essential elements of transactions.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The First National and Fayette National Banks at Lexington discounted, each, certain notes signed by the firm

of H. Gilbert & Co., Thomas Mitchell, and S. P. Kenney. The notes read:

"$10,000.        LEXINGTON, KY., Dec. 11th, 1877.

"One hundred and twenty days after date we, or either of us, jointly and severally, promise to pay to the order of the Fayette National Bank ten thousand dollars, with interest at the rate of eight per cent. per annum, from date until paid, without defalcation, for value received, negotiable and payable at the Fayette National Bank of Lexington, Ky.

(Signed),              "H. GILBERT & CO.,
                       "THOS. MITCHELL,
                       "S. P. KENNEY."

Thos. Mitchell and S. P. Kenney, whose names appear to these notes, were both members of the firm of H. Gilbert & Co. S. P. Kenney, on the 11th of March, 1878, executed a deed of trust to the appellee, J. H. Shropshire, for the payment, *pro rata*, of his creditors "in the order and with the preference only prescribed by law as to the liens of individual and partnership creditors." About the same time the firm of H. Gilbert & Co., becoming embarrassed, by an agreement with creditors, assigned to the appellee the firm effects in trust, for firm creditors. In making a distribution of the assets of the firm of H. Gilbert & Co., the appellants, the Fayette National Bank and others, presented their claims, and received a *pro rata* dividend amounting to 31 per cent. The trustee Shropshire (appellee) having filed his petition in equity for the settlement of these trusts, the appellants, after receiving their dividends of the firm assets, presented their claims, and demanded of the assignee, Shropshire, their *pro rata* dividend of S. P. Kenney's assets in the distribution to be made to his (Kenney's) individual creditors. It is admitted that the individual estate of Kenney will only

pay about 30 per cent. upon the claims against it, and as the appellants had received from the firm of H. Gilbert & Co. a greater dividend, the individual creditors of S. P. Kenney insisted that appellants could take nothing from Kenney's individual assets until the individual creditors had received as great a dividend as had been paid the appellants out of the firm assets.   The chancellor below adjudging in favor of the individual creditors, the case is here on an appeal from that judgment.

It is insisted by counsel for the appellants, that as the individual signatures of Mitchell and Kenney appear to these notes, that the obligation imposed on them both a partnership and an individual liability; "that the holders of the notes possess all the equities of both partnership and individual creditors."   This is the single question to be considered in this case.

We are met at the threshold of the investigation with the suggestion that the purpose of requiring the individual signatures of two of the members of the firm of H. Gilbert & Co. to the notes was to create both a partnership and an individual liability, so that the appellants could assert all the equities belonging to both classes of creditors.   What the intention of the parties was at the time these notes were executed is to be gathered alone from the face of the instrument, and an agreement to the effect that the individual estate of the members of the firm should be liable will not be permitted to affect the equities of either partnership or individual creditors.   If in a firm liability the firm creditor has received his part of the firm assets, the chancellor will close the hands of such a creditor until the individual creditor is made equal with him ; so the question at last is, was this, as between the parties to the paper, the debt of the

firm? This court, in the case of the Northern Bank of Kentucky v. Keiser (2 Duvall), says: "It is not true, as sometimes said, that the claims of these relative priorities is that the partnership creditors trust the partnership property, and the individual creditors trust the individual property. The truth is, that each class of creditors look to both classes of property, and unless they conflict, each have a right to subject both the individual and partnership property." That the individual creditors of Kenney regarded the solvency of the firm and its business capital as an additional security to their claims to the extent of Kenney's interest in the firm, and the appellants looked to the individual as well as the firm assets for the payment of the several notes, we think are facts that may be safely assumed.

There was certainly no lien created on the individual estate of Kenney by his signature to the notes, upon which distribution is sought, nor is it questioned that the parties had the right by contract to create liens that the chancellor could not impair or disregard, or strengthen their claims by having the name of a stranger to the firm as surety; but it is maintained that although Kenney is individually liable, because he is a member of the firm; still there is a legal right, or an equity, arising in favor of the partnership creditors in this case that would not have existed in the absence of Kenney's individual signature. It is conceded that a several and joint liability exists by reason of the firm signature, and that Kenney's individual estate could be subjected to the payment of the several debts, as well as his interest in the partnership; but having evinced a purpose to make himself individually liable, and appellants having accepted the notes with Kenney's individual signature to them, that such a liability might be created, it is urged that he must be

regarded in this equitable distribution of assets as both a partnership and an individual debtor.   This we think he was without signing his name to the paper, and that the appellants were both partnership and individual creditors; but when, at their own instance, they were subrogated to the rights of the partners, and given an exclusive lien on the assets of the firm for the payment of their debts, when asking equity they will be required to do equity.

The chancellor would be reluctant to adopt such an unjust and unequal principle of distribution if no equitable rule existed with reference to the marshaling of assets; and when, by reason of the lien of the partners, courts of equity have worked out a lien for partnership creditors, and when asked to do so gives them a preference, because they were debts owing by the firm, and on condition that they should not participate in the distribution of the individual assets until the individual creditors, if any, are made equal with them, we are asked to discard this rule, and create other equities, for no other reason than that the individual name of a member of the firm appears to the note.   The same obligation exists to pay, and the same assets, firm and individual, are liable in either case, with or without the individual signature, and no conflict as to rights arises until the appellants have enforced an equity that gives them all the partnership assets to the exclusion of the individual creditor, and now insist that the equity of the individual creditor is gone by reason of the agreement that the debtor was to be individually liable.   That this is a partnership debt is evidenced by the fact that it has been presented to the commissioner or assignee, and the firm assets applied to its payment, and this, together with the position in which the names appear on the paper, authorizes such a conclusion.   If the

notes had been signed by each individual partner, reciting that it was for the benefit of the firm, could there be any doubt as to its being a partnership liability, and subject to all the equities of the partners in the disposition of the firm assets? The obligee, in such a case, if he desired, could assert his lien through the partners, and having done so, the chancellor would not give him this preference, and then permit him to share in the distribution of the individual assets without accounting for what he had received from the firm. It is immaterial how the partner's name gets on the paper; if it is a partnership debt, and the firm primarily liable as between it and the individual partner, it is a firm liability, and if the creditor asserts his claim against the assets of the insolvent firm, he will be estopped to say that the equity of the individual creditor is to be disregarded, or that such an equity never existed, because the individual signing made the individual partner liable, either as principal or surety. A court of equity delighting in equality would strive to prevent such a distribution instead of seeking a mode for obtaining it.

Whether or not the rule in England against double proof in the administration of bankrupt estates is recognized as authority here, is not material to inquire. It is certain that, under the rule established in the case of the Northern Bank of Kentucky v. Keiser, 2 Duvall, the firm creditor is entitled to distribution out of the individual estate of the debtor after the individual creditor has received as much as the firm creditor. The rule established in that case is:

1. That each partnership creditor, on the equitable principle of subrogation, is entitled to the same lien the partners have.

2. They are not compelled to assert, but may waive that priority, and thereby leave the whole estate subject to all creditors alike.

3. If the partnership creditors exhaust the partnership assets without being paid in full, the individual creditor has the right to make a like amount out of the individual assets, and when this is done, the individual estate remaining will be distributed among all the creditors (partnership and individual) in proportion to their respective debts.

This rule does not apply, of course, where the creditor has obtained liens by contract, or where strangers to the partnership are sureties for the firm, the chancellor having no greater right to disturb such liens and contracts than the common law judge; but one partner will not be allowed, by becoming a surety for a firm debt, to change the equitable doctrine of subrogation, so as to give the partnership creditor all the firm assets, and then allow him as much of the individual estate of the partners as his individual creditors receive in the distribution. The rule in Keiser's case is both just and equitable; and if the debt is that of the firm, as between it and the individual partners, the position or manner in which the individual name of a partner appears on the paper is immaterial, and will not be permitted to disturb equitable rules so well understood in the settlement and distribution of insolvent estates.

Northern Bank of Kentucky v. Keiser, 2 Duvall; Hibler v. Davis, 13 Bush; Logan vs. Anderson, 18 B. Monroe.

Judgment affirmed.