(Summit Co., O., Probate Court.)

IN RE ESTATE OF JOHN ROBB, DECEASED.

1. Where the assets of an insolvent co-partnership will pay a dividend of only three tenths mills, the creditors being numerous, and their claims varying greatly in amount, and there is no living solvent partner, the partnership creditors have a right to share equally with the individual creditors in the distribution of the insolvent estate of one of the partners.
2. A creditor of an insolvent estate having the unqualified right to the whole of a certain fund, is entitled to interest accruing thereon pending litigation concerning it, between such creditor and the administrator; and in such a case the creditor cannot be compelled to accept a percentage with the creditors of the deceased.
3. Funds of an insolvent estate in the hands of the administrator, unlike assets in the case of an assignment, are subject to taxation.

(Decided November 1, 1897.)

ANDERSON, J.

Ellsworth E. Otis is the administrator de bonis non of the insolvent estate of John Robb, deceased, and his application herein prays for an order directing the distribution of the funds in his hands.

John Robb was a member of Meahl, Robb and Company, an insolvent co partnership composed of John Robb, Jacob Meahl and John Cook. Meahl and Cook are both insolvent, and the partnership assets will pay but three and three-tenths mills on the

dollar. The administrator has a fund of $3,825.77 for distribution, and the creditors of the Robb estate claim that they are entitled to the entire fund to the exclusion of the partnership creditors, who, on the other hand contend that they have a right to share equally with the individual creditors in this fund; that in any event, the individual creditors can exclude them only from so much of this fund as equal the percentage received by them from the partnership assets.

Various rules have been adopted by the American courts as to the distribution of the joint and separate assets of insolvent partnerships and partners. A number of authorities support the rule that the partnership creditors are confined to the joint assets; that they cannot resort to the individual assets until individual creditors are satisfied, even if there are no joint assets. Murrill et al., v. Neill et al., 8th Howard, U. S. 414, 418.

In Kentucky the rule is that the joint creditors must first exhaust the partnership assets; the individual creditors are then entitled to an equal dividend from the separate estate, after which, both the joint and separate creditors share pro rata in the balance of the individual estate. Bank. v. Keyzer, 2nd Duvall 169; Bank v. Kenney, 79 Ky. 133.

Again it is said that joint creditors may first exhaust the joint assets, and then share pro rata with the individual creditors in the separate assets. 19th Vt. 292. Cox v. Miller, 54th Texas 16; Camp v. Grant 21st, Conn. 41.

Whatever may be said of the equity of such a rule, it is to be observed that it more nearly follows the analogies of the law than any other. At law the partnership creditors may have judgment against the individual members of the partnership, and obtain satisfaction from the individual property, but though the separate creditor can levy on partnership property, his lien is subject to the payment of partnership debts.

Still another rule prevails. Where there are joint and separate effects for distribution, the joint creditors can in equity only look to the surplus of the separate estate of a partner after the payment of his individual debts, and the individual creditors can in equity only seek distribution from partnership effects out of the surplus of the joint fund after payment of the partnership debts. But where there is no joint estate for distribution and no living solvent partner, the joint creditors share pro rata with the separate creditors in the individual estate. This is the rule in Ohio. Rodgers v. Meranda, 7 Ohio St., 179, 191; Grosvernor v. Austin, 6th Ohio, 104.

If it is an equitable rule which confines the partnership and individual creditors to the joint and several assets respectively, it is a little difficult to see why the joint creditors should share in the individual assets when there are no joint effects, but such is

the rule. Brock v. Bateman, 25th Ohio St., 609.

At the close of the opinion in the case last cited, Welch, J. says: "What should be the rule were the partnership assets are insignificant, or where they will yield to the creditors of the firm a less dividend than the creditors of the individual members would realize from the individual assets, and whether the creditors of the firm should in such case be confined to the partnership assets, we are not called upon, in the present case, to decide."

Here is an intimation that if the partnership assets are insignificant, the court may enlarge the rule for the benefit of joint creditors. However, in Clapp v. The Banking Company, 50 Ohio St., 528, 529, 541, the joint assets were about 4 per cent., but the court did not consider this as insignificant.

In the present case, however, a dividend of only three and three-tenths mills can be paid to joint creditors. A partnership creditor having a claim of $1,000 would receive a dividend of $3.30, but a creditor having a $3.00 claim could receive nothing. There is a great number of joint creditors with claims large and small, and since some of these can receive no dividend whatever, the court is constrained to apply the maxim "De minimis non curat lex". Since the proper distribution of so small a fund is impracticable, there is every reason for saying that there are no joint effects.

It is believed that the Kentucky rule is the most equitable, but we will be obliged to dispose of this case in accordance with the decisions of our supreme court in the cases before referred to, and therefore, there being no living solvent partner, the joint creditors under the Ohio rule (or rather the exception to the general rule), are entitled to share pro rata in the individual assets with the separate creditors.

2nd. The second question for solution arises upon the following state of facts: Stephan Ginther, the first administrator of the Robb estate, was ordered by the probate court to pay the Citizens Savings and Loan Association $409.83, which sum resulted from the sale of real estate upon which the bank claimed a lien. Mr. Ginther declined to abide by the decision of the lower court and litigated the question through all of the courts of the state, the judgment of the probate court being affirmed by the supreme court and all the intermediate courts. Interest amounting to $122.95 has accrued upon this claim pending the litigation, and the bank claims a preference over the other creditors to that extent, while they insist that the bank must pro rata with them. If the administrator had complied with the order of the probate court, this question of interest would not have arisen; he saw fit however, to litigate the question, and in so doing he represented all of the creditors.

This interest claim is a demand existing against the administrator as such, and it stands upon an entirely different footing from a claim which originally existed against the deceased. The administrator could not escape paying the costs made by this litigation in full, and neither can he avoid payment of this interest. The bank is entitled to this preference, and the interest must be paid in full. If the administrator prosecuted this litigation captiously, the creditors have their remedy against him and his sureties.

3rd. Is the fund in the hands of the administrator taxable? He has listed it for taxation, but the estate being insolvent, and the supreme court having decided in McNeil against Hagerty, 51st Ohio St., 255, that funds in the hands of an assignee for the benefit of creditors of an insolvent debtor cannot be taxed, he asks for instructions upon this point.

An examination of this case shows that the supreme court based its ruling upon a construction of the statutes relating to assignments and to other trustees, and not upon the fact of the insolvency of the estate. In commenting upon the legislation bearing on this question the court says, on page 264: "All taxes of every description assessed against the assignor upon any personal property held by him before his assignment, shall be paid by the assignee or trustee out of the proceeds of the property assigned, in preference to any other claims against the assignor. Nowhere is it in terms provided that the assignee shall list the property for taxation, nor is provision made for the payment of any taxes save those existing against the assignor. This omission seems to us significant when contrasted with the duty enjoyed by other sections of the satute upon other trustees. By sec. 2734, returns must be made of the property of every ward by his guardian, of every estate of a deceased person by his executor or administrator, etc. It is made the duty, of every executor or administrator to apply the assets to the payment of debts in the following order: 4th, Public rates and taxes and sums due the state for duties on sales at auction."

"Again, on page 265 the court says: The omission referred to would seem also to suggest a distinction between the relation of an assignee to creditors of the assignor and to the trust property held by him, and the relation sustained by a guardian, an administrator or a receiver of a corporation. As to administrators, it is true that property in their hands is subject to the payment of the debts of the decedent, and that creditors are expected to list their claims as credits, and often it happens that the debts consume the entire assets, but usually there is in fact as well as in contemplation, a residue going to widows and legatees, or heirs, and they are not required to list for taxation any amount until it is actually received."

This argument of the supreme court seems to settle the question beyond dispute, and the administrator will be required to pay the taxes on the funds in his hands.