## Hagan et al. v. Hurst et al.

(Decided March 22, 1929.)

646

OSSO W. STANLEY for appellants.

KELLEY & KELLEY, FULTON & FULTON and J. SMITH BARLOW for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On October 1, 1926, W. F. Shehan and the appellee, John Finn Hurst, formed a partnership under the name of the Central Motor Company. This partnership was dissolved in June, 1927, when the business was sold to John H. Brumley for $3,525.99. This sum has been deposited in bank to await the outcome of this suit. At the time Shehan entered into this partnership, he was indebted to L. E. Marks and to R. L. Hagan. About that time Marks secured a judgment for his debt, and in December suit was brought on the Hagan debt and an attachment issued, which was served by the sheriff, summoning Hurst representing the Central Motor Company to answer as garnishee. Mr. Hagan died in December, 1926, and his widow was appointed his executrix. On March 1, 1927, Shehan executed a mortgage to Hagan's executrix and Marks jointly on "all his right, title and interest in and to the machinery, equipment, stock, goodwill and all other assets in the present firm of Central Motor Company, one-half of which are owned by the party of the first part (Shehan) and the other half by

John Finn Hurst. To have and to hold the same unto said parties of the second and third part (Hagan's Executrix and Marks) of equal dignity, one with the other, said property and interest; provided, however, that said Central Motor Company may sell in regular course of business the stock covered by this mortgage but with the understanding, stipulation and agreement that new stocks acquired in due course shall be subject to this mortgage.''

This mortgage was recorded on March 10, 1927. At the time the partnership dissolved in June, 1927, it was indebted in the aggregate amount of $4,037.06, of which $2,269.90 had been incurred prior to March 10, 1927, and $1,767.16 thereafter. The question involved in this case is whether the appellants who are the mortgagees in the Shehan mortgage have a prior claim to the fund now in bank or have the partnership creditors such prior claim and if the latter do they all have priority over the appellants or only those whose debts were created prior to March 10, 1927. All parties to this litigation concede that the right of partnership creditors to have the partnership assets devoted to the payment of the partnership debts in priority to the individual debts of the partners is a derivative right and one which partnership creditors must work out through the partnership lien of the partner; that a partner at least while the firm is solvent has the right, if he so desires, to waive his partnership lien, and, if he does, the partnership creditors lose to the extent of such waiver their priority in the partnership assets. Couchman's Adm'r v. Maupin, 78 Ky. 33. However, if the partner has not waived his partnership lien, then the partnership creditors have a prior claim to the partnership assets over the individual creditors. On the question whether or not Hurst waived his partnership lien, the evidence for the appellants is to the effect that, just before the mortgage was given to them, Marks told Hurst about Shehan's indebtedness to him, and informed Hurst that Shehan proposed to give him a mortgage, whereupon Hurst said that ''it was all right with him.'' Mr. Hagan's son also testified that some time prior to Marks' claimed interview with Hurst he was talking with Hurst about Shehan's indebtedness and told Hurst that Shehan was going to put a mortgage on his interest in the firm. Hagan does not say that Hurst agreed that Shehan might do this. Hagan's testimony

amounts to no more than that Hurst knew that Shehan was going to give a mortgage. Appellant also calls attention to the fact that Hurst was served as garnishee in the Hagan suit, and must therefore have known that Shehan would have to do something in order to protect the new firm; that, as the new firm was allowed to proceed, the inference is that Hurst acquiesced in whatever Shehan did to protect it. On the other hand, Hurst denies the conversations testified to by Marks and young Hagan. He says that he never heard of the mortgage until after the partnership was dissolved and his attention was called to it by his attorney. He further states that when he was served by the sheriff with what he thought was a summons the sheriff told him not to bother any more about it until he, the sheriff, gave him notice to attend to it, for which reason he had dismissed the incident from his mind. Hurst also produced a paper which he claims he had not seen until after the dissolution of the partnership, when it was found among the papers of the firm in the back part of a drawer in a desk. This paper had been prepared by Marks for the signature of Hurst and Shehan, and given by him to Shehan. When found it was signed only by Shehan. This paper, in substance, provided for the payment of a debt Shehan owed the wife of Marks by crediting to its amount a debt Marks owed the Central Motor Company for work it had done for him. This paper, however, said nothing at all about the mortgage which Marks had had Shehan give him, from which appellee argues that Marks never undertook to get Hurst's consent to the mortgage, else he would have embodied it in this paper along with Hurst's consent to the adjustment of his debt due the Central Motor Company in the manner indicated. The lower court held that Hurst did not consent to the giving of the mortgage so as to waive his partnership lien, and we cannot say that the evidence does not support the chancellor's finding. At least where our own minds are left in doubt we must under familiar law accept the finding of the chancellor. It results, therefore, that, as Hurst never waived his partnership lien, the appellants are not entitled to priority in the firm assets over all the partnership creditors of the firm.

Appellants argue, however, that, even if this be so, they are at least entitled to such priority over all creditors whose debts were incurred subsequent to the record-

ing of their mortgage, and they rely upon the case of Merkley v. Gravel Switch Roller Mills Co.'s Assignee, 90 S. W. 1059, 28 Ky. Law Rep. 1010, in support of their contention. It must not be forgotten that the rights of the creditors of a partnership to have the firm assets devoted to their debts is a derivative one arising out of the partnership lien of the partner. The partnership lien of Hurst arose at the time he and Shehan entered into their partnership the preceding October, and that lien continued throughout the existence of the partnership. Shehan could not by any mortgage he thereafter put upon his interest in the firm subordinate the partnership lien thereafter to his individual creditors. The partnership lien remains superior throughout the existence of the firm, and, as the firm creditors work their rights out through this partnership lien, their rights are superior to those of the individual creditors. Burdick on Partnership (3d Ed.) p. 135; Daniel v. Crowell, 125 N. C. 519, 34 S. E. 684; Receivers of Mechanics' Bank v. Godwin, 5 N. J. Eq. 334. See, also, section 27 of the Proposed Uniform Partnership Act. In the Gravel Switch case, supra, the parties before they entered into the partnership had placed mortgages on the contributions they made to the partnership capital. Of course the partnership lien under such circumstances could attach only to the equity of the partners in their contributions to the firm capital. That is not the case here. It follows that appellants are not entitled to priority over any of the firm creditors to the fund now in bank.

The judgment of the lower court being in accord with these views, it is affirmed.