# Gowin et al. v. Lake.

(Decided April 19, 1932.)

MARSHALL DUNCAN for appellants.

JOSEPH POLIN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

During the year 1930, B. D. Lake and John T. Gowin were partners in the operation of a farm owned by Lake. Early in the year 1931, the partnership was dissolved by agreement of the parties, and the assets were reduced to cash. Thereupon Lake brought this action against John T. Gowin and S. H. Gowin, who held a mortgage on John T. Gowin's one-half interest in the partnership property, for the purpose of determining how the partnership assets should be distributed. S. H. Gowin filed an answer and counterclaim, pleading among other things,

that his mortgage lien on the one-half interest of John T. Gowin was superior to all other liens on the property, including the firm or partnership debts of Lake and Gowin. To that portion of the answer and counterclaim a demurrer was sustained, and, the defendants having declined to plead further, it was adjudged that the partnership assets be applied, first, to the payment of the costs of the action; second, to the payment of the debts owing by the partnership; third, that out of the remainder Lake be paid an amount sufficient to equalize him with John T. Gowin, and that the balance be applied on a note of $1,557 executed by the Gowins to the Springfield State Bank on which S. H. Gowin was surety, and to secure which the mortgage was executed. From that judgment this appeal is prosecuted.

The facts are these: During the year 1929, Lake and Harry McPherson were partners in the operation of Lake's farm. During the fall of 1929, Lake and McPherson concluded to dissolve the partnership. On October 9, 1929, Lake and John T. Gowin entered into a written contract of partnership by which Lake leased the farm for a period of one year beginning January 1, 1930, with the privilege of three years, under the same terms and conditions. In addition to other provisions as to the sharing of the profits and losses in equal proportions, the contract provided as follows: "Each party is to own, or acquire ownership of one-half of the stock on the place, and to own or acquire ownership of one-half of all the feed on the place."

In order to comply with his part of the contract, it was necessary for John T. Gowin to purchase the one-half interest of McPherson in the partnership property. This he did, and, to secure the money with which to complete the purchase, he borrowed from the Springfield State Bank $1,557, and executed his note therefor, with appellant S. H. Gowin as surety. At the same time John T. Gowin mortgaged his one-half interest in certain live stock, feed, etc., then on the farm of B. D. Lake.

The grounds on which S. H. Gowin claims a superior lien on the property involved, as set forth in his answer and counterclaim, may be summarized as follows: At the time of the execution of the partnership contract between Lake and Gowin, Lake and McPherson were partners in the operation of the farm, each owning a one-half interest in the stock, implements, and feed. In order to

comply with the requirements of his contract, John T. Gowin contracted with McPherson to purchase the latter's half interest in the stock at an agreed price.

"By the terms of said contract between John T. Gowin and Harry McPherson the said property or the interest of Harry McPherson in same was to be delivered to John T. Gowin upon the payment by him of the purchase price thereof, with the exception of $50.00 theretofore paid, and the agreed date of delivery was January 1, 1930. He states that the title to said one-half interest in said property remained in Harry McPherson until the purchase price should be paid by John T. Gowin and that said property was to be delivered simultaneously with the payment of the purchase price."

John T. Gowin at that time was without capital, or other means of acquiring or paying for McPherson's one-half interest in the property, and, in order to procure the capital, it was necessary for him to borrow the money. John T. Gowin was unable to borrow the money without giving security on his note. To enable him to borrow the money, S. H. Gowin agreed to sign as surety the note for $1,557 to the Springfield State Bank, in consideration of the execution of a mortgage by John T. Gowin covering his interest in and to the stock, etc., acquired from McPherson. Upon the agreement of J. T. Gowin to execute the mortgage, S. H. Gowin signed the note as surety. John T. Gowin then paid the $1,557 to Harry McPherson, and simultaneously with the payment executed and delivered the mortgage. Had it not been for the execution of the mortgage S. H. Gowin would not have bound himself as surety on the note. But for the suretyship J. T. Gowin could not have procured the funds with which he acquired the one-half interest in the stock, implements, and feed. S. H. Gowin had no knowledge or information sufficient to form a belief as to whether Lake had personal knowledge on or about January 1, 1930, that said mortgage was executed, but he did have constructive notice and knowledge of same from and after 12:45 o'clock p. m. on the 10th day of January, 1930, and all the indebtedness of the partnership was made subsequent to the execution, delivery, and recording of the mortgage. However, Lake, prior to the execution of the note and mortgage, did know that John T. Gowin had no capital with which to purchase the one-half interest in the stock,

implements, and feed, and well knew that same had to be borrowed or otherwise procured by the said John T. Gowin.

The members of a partnership, as against one another, have an equitable right, which is often denominated a "lien" by courts and text-writers, to have the partnership assets applied in liquidation of partnership debts before any one of the partners, or his individual creditors, can claim any right or title to them, and to have the surplus divided among the members of the firm. Pearson v. Keedy, 6 B. Mon. 128, 43 Am. Dec. 160. This equity not only includes the right to have the firm funds applied to pay firm debts, but it gives a partner a right to insist that, after the firm debts have been paid, he must be repaid, not only his share of partnership assets, Harlin v. Bennett, 127 Ky. 572, 106 S. W. 287, 32 Ky. Law Rep. 473, 128 Am. St. Rep. 360, but also advances made by him to or on behalf of the partnership before any payment is made to the other partner or his individual creditors. Hobbs v. McLean, 117 U. S. 567, 6 S. Ct. 870, 29 L. Ed. 940; Hatchell v. Chew, 58 S. W. 816, 22 Ky. Law Rep. 738. It is also the rule that the partnership lien of a partner arises at the time the partnership is entered into, and continues throughout the existence of the partnership, and that one partner cannot by mortgage put upon his interest in the firm subordinate to his individual creditors the partnership lien of the other partner. Hagan v. Hurst, 228 Ky. 645, 15 S. W. (2d) 446.

These rules are conceded, but it is insisted on behalf of appellants that they do not apply to the facts of this case. The argument is that the partnership lien does not arise upon the mere agreement to form a partnership at an indefinite future date, but arises only when the agreement is consummated and the partnership is really formed; that here there was no date of commencement of the partnership; that the partnership agreement contemplated that John T. Gowin was to acquire the property of Harry McPherson whose place he was to take in the partnership; that it was known to Lake that he had no money with which to make the purchase, and that it would be necessary for him to borrow the money; that, in order to borrow the money, it would be necessary to procure a surety and secure him against loss; that the agreed date of delivery was January 1, 1930, and the title

to the one-half interest in the property remained in McPherson until the purchase price should be paid, and that the property was to be delivered simultaneously with the payment of the purchase price; and that, as the title to the property mortgaged did not pass until it was paid for, and that it was not paid for until the mortgage was executed, the property covered by the mortgage was the individual property of John T. Gowin, and did not become partnership assets until after the mortgage was executed. It is not even claimed that Lake knew that John T. Gowin was to execute a mortgage on the property in order to secure the money paid therefor. All that is alleged is that he knew that John T. Gowin had no capital with which to purchase the property and that the same had to be borrowed or otherwise procured by him. Manifestly Lake's mere knowledge of these facts did not amount to a waiver in favor of the mortgagee. Moreover, if the property mortgaged was partnership assets at the time the mortgage was executed, the mere fact that the partnership debts were thereafter created, or that the advancements by Lake were thereafter made, did not have the effect of subordinating the partnership lien to the mortgage. Hagan v. Hurst, supra.

Had it been alleged that the contract of sale between McPherson and John T. Gowin provided that the title to the property was not to pass until the property was paid for, and that this fact was known to Lake, a different question would be presented. There is an allegation that the title remained in Harry McPherson until the purchase price should be paid, and that the property was to be delivered simultaneously with the payment of the purchase price, but this allegation is not predicated on the contract, but is a mere legal conclusion. Coming then to the admitted facts, we have this situation: The partnership agreement to operate the farm was made in October, 1929. The farm was leased from January 1, 1930. From that time on the partnership agreement was effective. The property was acquired for partnership purposes, and the delivery was to take place on January 1, 1930. On that day John T. Gowin took possession of the farm on which the property was located. He paid $50 of the purchase price. There is no showing that, under the terms of the contract between him and McPherson, from whom he purchased the property, prepayment of the purchase price was a condition precedent

to the sale. In the absence of such a provision in the contract of sale, the fact of payment had no bearing on the transfer of title, and the title passed when the property was delivered, even though the price was not to be paid until a future date. Commonwealth v. Adair, 121 Ky. 689, 89 S. W. 1130, 28 Ky. Law Rep. 657; Hibbard v. Estridge, 156 Ky. 122, 160 S. W. 746. In the circumstances, the property purchased became partnership assets before the mortgage to S. H. Gowin was executed, with the result that the mortgage lien is inferior to Lake's lien for advances to the partnership as well as the lien of the partnership creditors.

Judgment affirmed.