## Fyffe v. Skaggs.

(Decided Nov. 15, 1932.)

6

WHEELER & WHEELER for appellant.

C. F. SEE, Jr. for appellee.

Opinion of the Court by Judge Richardson—Reversing.

J. C. Skaggs and W. M. Lester were the owners of an oil rig and equipment. The rig was operated by Lester under an agreement between him and Skaggs. John H. Fyffe was employed to assist in the operation. Skaggs sold his half interest in them to Fyffe, for the agreed consideration of $1,750, of which $150 was cash; $1,000 to be paid on the completion of the well which was then being drilled, and $600 on the completion of a second well. The contract between them was reduced to writing, signed, and delivered. Afterwards, it was modified by the parties to the extent that $500 was to be paid when the well which was then being drilled was completed, and $500 when a third well was completed. This modification was reduced to writing and signed by the parties. Lester abandoned the operation and the machinery. At the time he did so, it is shown, there had been purchased in the name of Lester and Skaggs various supplies and equipment which were used in the operation of the rig, by Lester and Skaggs, prior to Skagg's sale of his one-half to Fyffe.

It is the contention of Skaggs that he and Lester were not partners; that they were merely joint owners of the property; and that he had agreed for Lester to operate the rig and equipment, pay all expenses, including cost of supplies and new equipment, and then one-half the profit to belong to each of them. He claims that Lester bought the supplies and new equipment in his own name, and that he (Skaggs) was not to help pay for them. Fyffe claims that after the first well was completed the party for whom it was drilled would not pay for its drilling until the debts that had been incurred by Lester and Skaggs in its drilling were paid and the liens claimed by the parties holding the debts were satisfied, and that in order to collect for the drilling of the well after Lester abandoned the machinery, it was necessary and required that these claims be satisfied. He claims that he so informed Skaggs and thereupon Skaggs agreed for him to pay these debts, amounting to something near $1,000, and that Skaggs

would give him credit for one-half thereof on the debt which he was owing to Skaggs; that he accordingly paid the debts of Lester and Skaggs and in this way the $500, which he agreed to pay on the completion of the first well, was satisfied. Skaggs admits the existence of the debts which were incurred while Lester was in charge of the operations and that Lester abandoned the rig, leaving them unpaid.

Skaggs filed an action against Lester, alleging that he and Lester, during their ownership and operation of the drilling rig, "were partners," doing business in the firm name of Skaggs and Lester, engaged in the business of drilling for oil and gas in Johnson, Floyd, and other counties of Kentucky; that the firm was unable to meet its obligations; the machinery and equipment were of the value of $3,500, and there was imminent danger of the property being seized by the firm's creditors and sold under court proceedings against the firm, which would cause irreparable injury to it and its creditors. He sought a dissolution of the firm, and the appointment of a receiver to care for, and dispose of, the property under orders of the court. He verified his petition. He filed an amended petition repeating the allegation that he and Lester were partners, and made the further allegation that Lester had bought, for the partnership, drilling supplies and equipment which he listed therein. He further alleged the firm had no money with which to pay its debts and asked for one-half of the machinery to be sold by the receiver, under an order of court, and the proceeds thereof applied to the payment of Rose's debts (a note executed by him and Lester) and such other debts as the partnership owed.

There is no room for dispute that at least a portion of the machinery alluded to in Skaggs' petition in the action against Lester is the same for which the debts were paid by Fyffe, excepting Rose's, and which Fyffe claims Skaggs agreed for him to pay. There is less reason for the insistence that Skaggs and Lester were not partners in the machinery and its operation in the drilling of the first well mentioned in the contract between Skaggs and Fyffe.

It is an elementary rule that each partner has a lien upon all of the firm's property for the payment of the partnership debts and that they have the right to have the property of the partnership applied to the

payment of the firm's debts. Such lien arises when the partnership is entered into and continues throughout its existence. Planters'-Farmers' Warehouse Co. v. Citizens' Bank of Falmouth, 224 Ky. 466, 6 S. W. (2d) 720; Hagan v. Hurst, 228 Ky. 645, 15 S. W. (2d) 446; Gowin v. Lake, 243 Ky. 442, 48 S. W. (2d) 1059. A partner has no interest in the partnership assets which may be subjected to his individual debts, nor can it be mortgaged or sold by him free of the firm's debts, until the partnership debts are satisfied. Hagan v. Hurst, supra; Springfield Fire & Marine Ins. Co. v. Huntington National Bank, 229 Ky. 674, 17 S. W. (2d) 726, 71 A. L. R. 70. The sale by Skaggs of his one-half interest of the partnership property to Fyffe was subject to the lien of Lester, and the creditors of the partnership, which was enforceable against Fyffe as a purchaser of the interest of Skaggs in the partnership property. Fayette National Bank v. Kenney's Assignee, 79 Ky. 133; Power Grocery Co. v. Hinton, 187 Ky. 171, 218 S. W. 1013; Springfield Fire & Marine Ins. Co. v. Huntington National Bank, supra. At the time of Skaggs' sale to Fyffe, the creditors of the firm of Skaggs & Lester, under the doctrine of equitable substitution, had a lien on the partnership property to secure the payment of the firm's debts. In his contract with Fyffe, Skaggs expressly agreed that there was no mortgage or liens or "other payments" against the property "sold by him to Fyffe." This language of the contract was sufficient to require Skaggs to relieve the property of the lien of Lester, and the creditors of the firm. It is disputed by Skaggs that he agreed with Fyffe that if Fyffe would pay the claims for the supplies and equipment purchased by Lester, that he would surrender his claim for the first $500 of the purchase price of one-half of the drilling rig. But even if there was no such agreement, under the principles applicable to partnership debts, the one-half interest in the property was liable for, and it was the duty of Skaggs to pay, the one-half of the partnership debts which Fyffe claims he agreed for him to pay in satisfaction of the $500. The interest of Skaggs in the partnership property was only his share in the assets which remained after the debts of the firm were paid and its creditors had enjoyed preference over him and his individual creditors. Midland National Bank v. Douglas, 199 Iowa, 1190, 203 N. W. 44; Porter v. Hartley, 67 Mont., 244, 216 P. 344. It is apparent that it is our view that the court properly and correctly

required Skaggs to account to Fyffe for the one-half paid by him in satisfaction of Skaggs' and Lester's debts, even though there was no subsequent agreement to pay the same as claimed by Fyffe. It is conceded that the third well mentioned in the contract of Skaggs & Lester had not been drilled by Fyffe. It is the contention of Fyffe that he was prevented drilling it by the action of Skaggs. Accepting his contention in respect to the existence of the partnership debts which he paid in pursuance to his agreement with Skaggs, he having paid them, they did not delay nor prevent his drilling either of the wells. On January 8, 1930, he entered into a written contract with the Martin Oil & Gas Company, by virtue of which he was intending and endeavoring to drill a well, but he claims the Martin Oil & Gas Company refused to permit him to execute his contract with it and drill the well and that he had filed an action against it to recover damages for its breach. The evidence does not establish that by reason of any fault of Skaggs he was prevented drilling the well. It was the result of the breach of its contract by the Martin Oil & Gas Company that prevented his drilling it.

Fyffe was under the obligation to provide himself with the opportunity to drill the wells after the first one. Skaggs was under neither the duty nor obligation to provide any well for him to drill.

Skaggs filed an action against Lester August 8, 1928, to which Fyffe was not made a party. It is not shown that his filing the action against Lester interrupted Fyffe in his use or possession of the drilling rig. He filed this action against Fyffe in July, 1930, or more than two years after his contract of purchase with Skaggs. A judgment was rendered in the action against Lester at the June term 1930, more than two years after Fyffe's purchase, in which Lester's one-half interest in this machinery was directed to be sold. A judgment was rendered in the present action in June, 1931, or three years and one month after his purchase of Skaggs' one-half interest in the machinery. In his action against Lester as it appears herein, the possession and control of the machinery was not taken by any process of court. In fact, at the institution of this action, Fyffe was in possession and control of the machinery and operating it, and had been since Lester abandoned it. Skaggs set out in his petition as grounds for an attachment that Fyffe was insolvent and the col-

lection of his debt would be endangered by delay in obtaining a judgment or return of no property found. Subsection 8, section 194, Civil Code of Practice. Fyffe's possession of the rig and equipment was not interrupted by the processes of the court, in the case against him. The primary defense presented in his answer was that he had offered to pay the $600 claimed by Skaggs and the last $500 was not due because he had been prevented drilling the wells.

A summary of the facts shows that the contention of appellant that the last $500 was not due is untenable. It is a well-recognized rule that where no time is fixed in the contract for the completion of its performance, the law implies a reasonable time will be allowed (Erskine v. Chevrolet Motors Co., 185 N. C. 479, 117 S. E. 706, 32 A. L. R. 196), and what is a reasonable time depends on the facts and circumstances in the particular case. Elkhorn Consolidated Coal & Coke Co. v. Eaton, Rhodes & Co., 163 Ky. 306, 173 S. W. 798. It is a general principle of law that he who fails in, or prevents, the performance of a contract upon which his liability by its terms is made to depend, cannot avail himself of his own wrong, and thereby relieve himself of the obligations of his contract, as to the other party. Marshall v. Craig, 1 Bibb, 379, 383, 4 Am. Dec. 647; Majors v. Hickman, 2 Bibb, 217; Jones v. Walker, 13 B. Mon. 163, 56 Am. Dec. 557. While the drilling of the wells was in a sense a contingency, the happening of which was a condition precedent to Fyffe's obligation to pay the last $500 for the machinery (Allen v. Phillips, 2 Litt. 1; Jewell v. Blandford, 7 Dana, 472; Fox v. Buckingham, 228 Ky. 176, 14 S. W. (2d) 421), it was not drilled by Fyffe because of his own dereliction. The judgment of the chancellor was fully authorized and supported by the evidence, except the allowing of the interest from May, 1924, and a lien on the property.

The date of the contract of the sale of the machinery by Skaggs to Fyffe is May 1, 1928. The contract does not provide for the payment of interest, either before or after maturity. Therefore no interest was payable until the wells were drilled as provided in the contract, except in case of Fyffe's failure to drill them within a reasonable time after the date of the contract. The general rule is, in the absence of an agreement to pay interest, it is not collectible until the maturity of the obligation on the part of the promisor. Leisman

v. Otto, 1 Bush, 225; Brown & Bro. v. Lapp (Ky.) 77 S. W. 194, 25 Ky. Law Rep. 1134; Caldwell & Drake v. Pierce, 154 Ky. 771, 159 S. W. 559; Bauer Cooperage Co. v. Ewell & Smith, 149 Ky. 838, 149 S. W. 1137.

Interest was prayed for in the petition from May 1, 1928. The decreeing of interest in conformity with the prayer of the petition was not a misprision, but a reversible error. Civ. Code of Practice, secs. 516-518; Bunger v. Hart, 3 Ky. Law Rep. 518; Armendt, etc., v. Perkins (Ky.) 32 S. W. 270, 17 Ky. Law Rep. 1327; Collins v. Conley, 216 Ky. 582, 288 S. W. 316. No lien was set up in the Skaggs' petition and no attachment was issued or levied on the property of Fyffe. Therefore, no judgment should have been rendered as to the lien.

The answer to Fyffe presenting his defense was not controverted of record nor by a reply. For this reason he argues that he was entitled to judgment on the pleadings. The court, the parties, and their counsel treated the affirmative allegations in his answer as controverted. After a trial on the evidence as if the answer was properly controverted, he cannot be heard in this court to contend that the facts were not put in issue because no reply was filed to his answer (Marshall v. Craig, 1 Bibb. 379, 383; L. & N. R. R. Co. v. Tuggle's Adm'r, 151 Ky. 409, 152 S. W. 270), or that the judgment was not authorized by the pleadings.

Because of the error of the court decreeing interest from May 1, 1928, and a lien on the property, the judgment must be reversed. On the facts presented, no intreest should be decreed before the filing of the action. The appellee may be permitted to amend his petition and allowed to assert his lien.

Judgment reversed for proceedings consistent with this opinion.