**A. L. PICKENS COMPANY, INC.,**
**Plaintiff-Appellant,**

v.

**YOUNGSTOWN SHEET & TUBE COM-**
**PANY, et al., Defendants-Appellees.**

No. 79–3603.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 10, 1981.

Decided June 3, 1981.

Rehearing Denied July 8, 1981.

John G. Crutchfield, Ewen, MacKenzie & Peden, Louisville, Ky., for plaintiff-appellant.

Greenebaum, Doll & McDonald, Donald H. Balleisen, Louisville, Ky., for defendants-appellees.

Before KEITH, BROWN and KENNEDY, Circuit Judges.

BAILEY BROWN, Circuit Judge.

This breach of contract action was brought in the Western District of Kentucky to recover commissions allegedly due appellant, A. L. Pickens Co., Inc. (Pickens) under its contract with appellee, Youngstown Sheet & Tube Co. (Youngstown). As Youngstown's sales agent, Pickens procured an order for Youngstown steel products from the Tennessee Valley Authority

(TVA). The order was partially filled, and Pickens received a commission on that part of the order delivered and paid for. Because Pickens received no commission on the unfilled portion of the TVA order, it brought suit to compel payment. On cross motions for summary judgment, the district court held that the contract included a condition precedent to Youngstown's obligation to pay the commission that had not been fulfilled and entered summary judgment in favor of Youngstown. For the reasons expressed below, we reverse and remand.

On May 5, 1975, Youngstown and Pickens entered into a contract which provided that, within a territory, Pickens would act as Youngstown's sales agent with respect to certain of its products and Pickens agreed to forego handling competing products.[1] Pickens was to be paid commissions in accordance with paragraph 5 of the contract which states as follows:

> We will pay you a sales commission of 5% on our F.O.B. net realized mill value of our products covered by this agreement. This commission will be paid once each month on sales of our products on the invoices which have been fully paid. Beyond this 5% commission, we will make no allowance for any expenses you may incur in the solicitation or furtherance of business for us.

In April, 1976, Pickens procured an order from the TVA for approximately $3,000,000 worth of Youngstown steel products. On September 19, 1977, Youngstown stated that financial exigency forced the closing of its Campbell Works plant, which manufactured the steel products that were the subject of the TVA order. In this press release, Youngstown also stated that production of steel products from this plant would be "suspended after presently accepted orders are produced and shipped." In a letter dated September 21, 1977, Youngstown informed Pickens that portions of the Youngstown facility were closing[2] and that Youngstown was terminating its contract with Pickens. The letter also stated that: "We will ship those orders now on our books and any additional orders that can be supplied from existing stocks."

As of September, 1977, Youngstown had delivered, and received payment for, approximately $350,000 worth of the TVA order, for which Pickens duly received its commission. The remainder of the order, however, was never filled and Youngstown did not receive payment, nor Pickens a commission, on this unfilled portion.

Youngstown argues that paragraph 5 contains a condition precedent under which it is required to pay Pickens a commission only if it has received full payment for an order. Youngstown argues that because it has not received payment for the unfilled portion of the TVA order, the condition has not been met, and the commission is not due. Pickens, on the other hand, argues that paragraph 5 merely concerns the timing of, and not the right to, payment. In the alternative, Pickens argues that if paragraph 5 is a condition precedent, it should not operate in this case to relieve Youngstown of its obligation to pay the commission.

Initially we note that summary judgment is proper when "there is no genuine issue as to a material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties agree that Kentucky law applies to this diversity case, and that no material issues of fact remain unresolved. Under Kentucky law, construction of a contract term is a question of law. *See, e. g. Fox v. Buckingham*, 228 Ky. 176, 14 S.W.2d 421 (Ky.1929), *appeal after remand*, 35 S.W.2d 897, 237 Ky. 415 (Ky. 1931). Thus, the only question raised in this case is the proper construction to be

---

**1.** More specifically, Pickens was a sales agent for Youngstown Buckeye, Yoloy and Yokote Rigid Steel Conduit and Fittings and Youngstown Electrical Metallic Tubing and Fittings.

**2.** According to the letter, the closing of portions of the Youngstown facility caused it to discontinue production of "Youngstown Buckeye & Yoloy Rigid Steel Conduit and Fittings, Youngstown Electrical Metallic Tubing and Fittings, Yokote Conduit, Elbows, Couplings and all accessories."

**120**

given the contract provision in dispute. The district court held that the "straightforward and unambiguous" contract language and the course of performance that existed between the parties compelled the conclusion that paragraph 5 embodies a condition precedent that was not fulfilled. We disagree.

The sentence in paragraph 5 that the district court found to be unambiguous, and which Youngstown argues establishes a condition precedent, states as follows:

> This commission will be paid once each month on sales of our products on the invoices which have been fully paid.

It is true that this sentence may be interpreted as restricting Pickens' right to commissions to those orders for which Youngstown has received full payment. The sentence is, however, also susceptible to the interpretation that although Pickens' right to payment accrues when the order is secured, it agreed to postpone receipt of its commission until the invoices were paid.

In *Mock v. Trustees of First Baptist Church of Newport,* 252 Ky. 243, 67 S.W.2d 9 (1934), an architect agreed to prepare plans and specifications for a Sunday school building in consideration for a percentage of the total cost of the building. Difficulties arose concerning the church's ability to finance the venture, however, and the architect, having been partially compensated, agreed to wait for the balance due him "until the building was completed," the amount to be determined "based upon the cost of the building." *Id.,* 67 S.W.2d at 11. The building remained uncompleted for some time, and the architect brought suit to collect his commission. The court held that the completion of the building was not a condition precedent to the church's duty to pay, but operated merely to fix the time of payment. *Id.* The court held that the church had an implied obligation to pay the fee within a reasonable time. *Id.*

Similarly, in *Thos. J. Dyer Co. v. Bishop International Engineering Co.,* 303 F.2d 655 (6th Cir. 1962), a subcontractor agreed to perform certain services in return for a fee of $115,000. The contract provided that "no part of [the fee] shall be due until five (5) days after Owner shall have paid Contractor." *Id.* at 656. The owner became insolvent before paying the contractor and the subcontractor was likewise not paid. This court, in an opinion by Shackelford Miller, J., held, under Ohio and Kentucky law, that the relevant contract provision was not a condition precedent, but merely a timing-of-payment provision. *Id.* at 661.

The above cases illustrate the patent ambiguity that inheres in many clauses that purport to regulate a party's right to payment. In *Mock* and *Dyer,* as here, the operative contract provisions could reasonably be construed as affecting the right to, or the timing of, payment.

When a contract provision is, as the instant provision, reasonably subject to more than one interpretation, the Kentucky courts utilize the doctrine of contemporaneous construction. As Kentucky's highest court has stated:

> Under the doctrine of contemporaneous construction, courts are required to give great weight to the interpretation which the parties have placed on an ambiguous contract. The construction of the parties is best evidenced by their conduct with respect to the agreement.

*Billips v. Hughes,* 259 S.W.2d 6, 7 (Ky.1953). Thus, we are led to an examination of the *course of performance* engaged in by the parties to the contract.

The course of performance engaged in by Youngstown and Pickens, as revealed by Youngstown's accounting ledgers, indicates that Pickens was not paid a commission until the invoices on orders it procured were paid in full. At times it appears that deductions were made on commissions, presumably because of nonpayment or partial payment of invoices. On these occasions, however, Pickens eventually received this deducted portion of its commission. Nothing that we have found in the record indicates that a sale was made for which Pickens did not, at some time, receive its full commission and Youngstown has documented no such instance. Furthermore, as Pick-

ens argues, neither the contract or the proof of the parties' course of performance pertains to the situation in which an acceptable order is procured, but no invoice is sent. Thus, the course of performance with respect to this contract is unenlightening on the question whether paragraph 5 regulates the right to, or merely the timing of, payment of Pickens' commissions.

The affidavit of Thomas Gifford, Youngstown's Director of Accounting Services, is likewise of little aid in this regard. The district court relied, in part, upon Mr. Gifford's assertion that "[u]nder no circumstances would a sales agent be entitled to a commission on goods not actually shipped to and paid for by Youngstown's customer." Although the affidavit was uncontroverted, and Gifford was clearly competent to describe Youngstown's accounting procedures, his opinion on the ultimate legal question of when a right to payment accrues under the contract is not entitled to any weight whatsoever. As has been stated, "[t]he affidavit is no place for ultimate facts and conclusions of law." 6 Moore's Federal Practice, Part 2, ¶ 56.22[1], at 56–1316 (Supp.1979). When ultimate facts or conclusions of law appear in an affidavit which also contains the proper subject of affidavit testimony, facts within the personal knowledge of the affiant, the extraneous material should be disregarded, and only the facts considered. *See, e. g., Wimberly v. Clark Controller Co.,* 364 F.2d 225, 227 (6th Cir. 1966); *Cohen v. Ayers,* 449 F.Supp. 298, 321 (E.D.Ill.1978), aff'd, 596 F.2d 733 (7th Cir. 1979); *E. F. Hutton & Co. v. Brown,* 305 F.Supp. 371, 383 (S.D.Tex.1969). When the affidavit is stripped of Gifford's opinions concerning the ultimate legal issue presented in this case, the remainder of the affidavit recites the course of performance discussed above, which, as we have said, does not appreciably aid in our consideration of the proper characterization to be given paragraph 5.

The general rule of contract construction is that:

[C]onditions precedent are not favored and the courts will not construe stipulations to be precedent unless required to do so by plain, unambiguous language or by necessary implication. This is particularly so when interpreting a stipulation as a condition precedent ... would work a forfeiture or result in inequitable consequences.

17 Am.Jur.2d, Contracts, § 321, p. 752 (Supp.1980). Kentucky follows this general rule. *See Mock, supra,* 67 S.W.2d at 11 (absent clear intent that clause operate as condition precedent, courts hold that it fixes time of payment). In the instant case, the operative language is ambiguous, and construing paragraph 5 as a condition precedent would deprive Pickens of a commission when it has done everything under the contract that it could do to consummate a sale. In addition, Kentucky courts have stated that "No rule is better established than that, when a contract is susceptible of two meanings, it will be construed strongest against the party who drafted and prepared it." *B. Perini & Sons, Inc. v. Southern Ry. Co.,* 239 S.W.2d 964, 966 (Ky.1951), *quoting from Theatre Realty Co. v. P. H. Meyer Co.,* 243 Ky. 346, 48 S.W.2d 1, 2 (Ky.1932). In this case, Youngstown drafted the contract and mailed it to Pickens, which indicated its acceptance by signing the letter and returning it to Youngstown. Thus, this rule would also seem applicable. Under the above-noted presumptions, it would appear that paragraph 5 is properly construed as governing the time of, and not the right to, payment. Since the event that triggers payment of the commissions which are due has not occurred, and will not occur, the law implies a term that requires payment within a reasonable time. *See Mock, supra,* 67 S.W.2d at 11.

Even if the court were to accept Youngstown's characterization of paragraph 5 as a condition precedent, it would not operate in this case to relieve Youngstown of its obligation to pay Pickens its commission on the TVA order, for,

[W]here a person is obligated to make a payment out of particular funds, there is an implied obligation that the person liable will do nothing to prevent performance of the contract. *If the fund is to be*

*produced by the efforts of the obligor, or to result from his acts, he is under a duty to exercise reasonable care and diligence to produce the fund or to bring about the result.* And, if it be shown that the party obligated has prevented the creation of the conditions under which the payment would be due, without fault on the part of the other party, he is estopped to avail himself of a situation brought about by his own wrong. An obligation of mutual good faith and fair dealing is imposed by law because of the contractual relations of the parties.

*Odem Realty Co. v. Dyer,* 242 Ky. 58, 45 S.W.2d 838, 840 (1932) (emphasis added) (citations omitted). Thus, in *Fyffe v. Skaggs,* 246 Ky. 5, 54 S.W.2d 369 (1932), the drilling of oil wells was a condition precedent to appellant's obligation to pay $500 to appellee. Because the failure to drill was attributable to appellant, however, the condition was excused and payment required. *Id.* 54 S.W.2d at 372. *See also Fox, supra,* 14 S.W.2d at 423.

The Kentucky courts have also stated that

It is a familiar principle in the law of contracts that, in the absence of specification of duties and obligations intended to be assumed, the law will imply an agreement to do and perform those things that according to reason and justice the parties should do in order to carry out the purpose for which the contract was made.

*Warfield Natural Gas Co. v. Allen,* 248 Ky. 646, 59 S.W.2d 534, 536 (Ky.1933).

We think the above principles operate in the instant case to imply an obligation that Youngstown do those things necessary to bring about the payment of invoices, i. e. deliver the products ordered. When the contract was executed, both parties undoubtedly contemplated that, in the ordinary course of business, with both parties acting in good faith, proper orders procured by Pickens would be filled and delivered by Youngstown. Even when the unfortunate closing of the Campbell Works plant occurred, Youngstown evidenced its intent to fill those orders then on its books. Youngstown could have accomplished this by producing the goods itself or by purchasing them on the open market and delivering them to the TVA.[3] Had it delivered the goods, the invoices would certainly have been paid, and Picken's right to its commission indisputable. The failure of delivery, and thus of payment in full of the TVA invoices, is directly attributable to Youngstown.[4] Thus, even if paragraph 5 were construed as a condition precedent, Youngstown cannot avail itself of the nonoccurrence of the condition.

For the reasons expressed above, this court reverses and remands to the district court with instructions that it enter judgment for Pickens in the amount of commission due on the unfilled portion of the TVA order.

REVERSED AND REMANDED.

---

**3.** It appears that, for some reason that does not appear in the record, the TVA did not bring suit to compel performance of its contract with Youngstown. Youngstown does not contend that the TVA was not ready, willing, and able to comply with the terms of the accepted purchase order.

**4.** Although Youngstown pled impossibility or commercial impracticability, it did not pursue this theory before the district court, or before this court.