## Harmount & Wolff Tie Company v. Skinner.

(Decided January 31, 1930.)

TYE, SILER, GILLIS & SILER for appellant.

STEPHENS & STEELY for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellee John W. Skinner, who was the plaintiff below, brought this suit against the appellant to recover for a claimed breach of contract. The jury awarded him a verdict of $500, and from the judgment entered on that verdict this appeal is prosecuted.

To reverse the judgment appealed from, the appellant insists that it was entitled to a peremptory instruction, and that the lower court erred in the instructions which it gave. A consideration of the first ground requires a brief resume of the evidence.

The plaintiff testified that he and the appellant entered into a contract whereby he was to haul all the lumber cut and sawed from a described tract of land for $3 a thousand feet; that, after he had hauled a small part of the lumber, the appellant forbade him to haul any more, that he could have made a profit of $1 a thousand feet on the lumber covered by the contract, and that by reason of the breach he was damaged in the sum of $2,000. The appellant's evidence was to the effect that the contract between the parties was that the appellee was to haul the lumber for $3 a thousand feet, and was also to haul logs not cut or sawn for $5 a thousand feet plus $1 a thousand feet for loading them onto the railroad cars; that, after the appellee had hauled a small quantity of lumber and two loads of logs, he refused to haul any more of the logs; and that, as the contract was an entire one, and covered both lumber and logs, the appellee first breached the contract by his refusal to haul any more logs, and hence appellant was justified in refusing to permit him to haul any more lumber. With reference to the logs, the plaintiff testified that the

arrangement about them was a separate contract from that which covered the lumber. It is therefore clear that the real dispute in this case was whether the logs and lumber were comprised in one contract or two contracts, for, if they were comprised in two contracts which were independent of each other, the appellant had no right to refuse to allow the appellee to continue to haul the lumber. On the other hand, if the lumber and logs were covered by one contract, then the appellee had no right to refuse to haul the logs. It may be said in passing that no complaint is made of the size of the verdict, if the appellee is to recover anything at all.

On the question of whether the logs and lumber were covered by one contract or by separate agreements, the appellee testified that the appellant's superintendent met him while he was loading switch ties up at the Williamsburg yard; that this superintendent came up to him as he was loading these ties, and, in the language of the witness, said:

"He (the superintendent) was ready to give me the contract, if we could agree, on the lumber hauling from Briar Creek. . . . So I asked him what his prices was on the lumber and he said he could give me $3.00 a thousand to start with for the green and seasoned, all the lumber on Briar Creek. . . . I stood there and I studied for a few minutes—we was loading on the ties and then I said I would take the contract hauling lumber to Bon-Jellico and I said: 'It is about two and a half miles. I never measured it to know exactly how far it is'— and a bad road—and he said that he would make a good road for me to haul over and maintain it and I asked the question about the road getting so bad in the winter that we couldn't haul and he told me he would keep the road up the best he could and he said if the road got too bad until he couldn't keep it up, if it got too bad to keep up, it would be too bad to haul over and so we agreed on the amount we would put on in the winter."

The appellee then said that the superintendent turned and left him and went to his automobile that was parked near by, and then turned and came back to the appellee, and, in the language of the witness: "He

asked me how about taking the contract to haul some logs he had on his skidway.''

The appellee testified that the superintendent offered him $5 a thousand for hauling and loading; that he peremptorily turned this offer down, and then the superintendent added to the price of $5 a thousand $1 a thousand for loading the logs; that he still demurred about the price being inadequate, but finally agreed to haul two loads at this price to ascertain if he could make any money out of it; and that this arrangement about the logs was entirely separate and apart from the arrangement about the lumber. For the appellant, the superintendent testified that no contract was made about either the lumber or the logs at this interview; that he quoted the prices he was willing to pay for the hauling of the lumber and logs under one contract; that appellee said he would think it over; and that on the following Sunday he came up to the witness' home and accepted the offer previously made him. The appellee admitted he went up to the superintendent's home on Sunday, but he says that he only went to find out when he was to go to work under the arrangements made in the yard at Williamsburg. The superintendent is corroborated to some extent by witnesses who claimed that the appellee had stated to them in substance that the arrangements were as the superintendent claimed them to be; but the appellee denied that he had made these statements to these witnesses, and of course, it was for the jury to say which set of witnesses it believed. By its verdict it evidently believed the appellee, and, if they did, then undoubtedly the testimony established two contracts, one for the lumber and the other for the logs. Appellant argues that the appellee did not testify that any offer was made him at the interview in the Williamsburg yard, but deposed that the superintendent said he *could* give $3 a thousand for hauling the lumber. Appellant is ultra technical in this argument, for, fairly construed as a whole, appellee's testimony is undoubtedly to the effect that a contract about the lumber and another about the logs were entered into in the Williamsburg yard. Appellant contends, however, that its superintendent, as shown by his evidence, never intended to make two separate contracts, but, if he did what appellee said he did and as the jury believed he did. his secret intention cannot prevail over what he actually did.

In 13 C. J. 265, it is said:

"The apparent mutual assent of the parties, essential to the formation of a contract, must be gathered from the language employed by them, and the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. It judges of his intention by his outward expressions and excludes all questions in regard to his unexpressed intentions. If his words or acts, judged by a reasonable standard, manifest an intention to agree in regard to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of his mind on the subject."

It therefore follows that the motion for a peremptory instruction was properly overruled.

Coming to appellant's complaint of the instructions which the court gave, we find that by them the court in substance told the jury that, if the lumber contract was separate and distinct from the log contract, it should find for the plaintiff, but, if the lumber and logs were all covered by the same contract, they should find for the defendant. This was the only issue tried before the jury, and the instructions of the court fairly submitted it to them. The argument that there should have been a more detailed explanation of what the court meant by an entire and separate contract is without merit. In the first place, appellant neither offered nor asked for any such instruction. Secondly, under the facts and circumstances of this case, the jury, being men of common sense, knew that the court meant that, if the lumber was in one contract and the logs in another, the appellee was entitled to recover, but, if the lumber and logs were both in one contract, the appellant was entitled to the verdict. The question was so simple that no further instruction was necessary to get it fairly before the jury.

It is also complained that the court failed to give an instruction to the effect that, after the contract was breached by the appellant, if it was breached, it was then the duty of the appellee to seek other employment. But there is no merit in this contention either, because this was not a contract for personal services. It was simply one to haul the lumber from a described boundary, and

under the authorities, it clearly was not a contract for personal services. Ross v. Columbus Mining Co., 204 Ky. 474, 264 S. W. 1071; Swain v. Harmount & Wolff Tie Co., 226 Ky. 823, 11 S. W. (2d) 940.

No error appearing prejudicial to any substantial right of the appellant, the judgment is affirmed.