## G. F. Vanzant Lumber Company v. Hopkins.

(Decided March 24, 1931.)

ASTOR HOGG for appellant.

STEPHEN COMBS, Jr., for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

On July 2, 1928, the appellant, G. F. Vanzant Lumber Company, and the appellee, Robert Hopkins, entered into a written contract, the first paragraph of which is as follows:

"This contract is made with reference to the state of facts: The said G. F. Vanzant Lumber Company has purchased from the Consolidation Coal Company the timber on a certain boundary of land located on the waters of Millstone Creek in Letcher County, Kentucky, which boundary of land is approximately two and a half miles from Millstone Station on the L. & N. Railroad."

The second paragraph bound the appellee "to haul the lumber, ties, mining timber, etc., which second party (appellant) may manufacture from the timber on the above described tract of land," and load same on railroad cars a short distance above Millstone Station "at and for the price of $3.00 per M. feet, board measure." Other parts of the contract are not material to a decision of this case, except that it is provided that the work should be done "when and as directed by the second party, impossible roads excepted," and that, if he failed so to do, the lumber company should "have the right to recontract said work," or to do it by its own employees and charge the excess cost to Hopkins. There was no further description of the boundary than that contained in the first paragraph of the contract, and no statement as to the quantity of timber covered by it.

Alleging his own ability, readiness, and willingness to carry out the contract, and that he had reported on the ground in Letcher county for that purpose and remained there for eight months, the plaintiff charged that the defendant had breached the contract by failing and refusing to furnish the materials stated for hauling as provided therein, and by contracting with another to

do the same work. He averred that the boundary contained approximately 15,000,000 feet of lumber and logs, and that, if he had been permitted to perform his contract, he could and would have made a net profit of 50 cents per thousand, or a total of $7,500, for which sum he prayed judgment.

The defendant denied that the plaintiff was ready, able, or willing to do the work or had reported for that purpose, and denied that it had refused to comply with the contract or had refused the plaintiff the right to do so. It also denied the allegations as to the quantity of timber and that plaintiff had suffered any loss of profits. It affirmatively pleaded that the plaintiff had breached the contract and that it was forced to contract with another to do the work at 50 cents per thousand feet more than what plaintiff had agreed to do it for.

A reply traversing the affirmative allegations of the answer completed the issues.

A judgment in favor of the plaintiff for $2,500 was rendered, and the defendant appeals.

On the trial, the court permitted the plaintiff to show that there were two forks of Millstone creek, upon the waters of which stream the boundary of timber lay as stated in the contract, and also to testify that his contract covered only that part of the boundary upon the left-hand fork. It appears from the record that the company had a circular sawmill upon the right-hand fork and was engaged in getting out lumber when the appellee went to Letcher county, and that it requested him to haul out this lumber. After starting to do so, he stopped because it was farther from the station than the other mill and was not included in his contract. It does not clearly appear that at the time the break between the parties occurred there was any material ready to be hauled from the left-hand fork of the creek, which constituted the larger portion of the boundary of timber which the appellant had acquired of the Consolidation Coal Company mentioned in the contract. Before that lumber had been manufactured, the company contracted with another to haul it out because the appellee had refused to move the lumber and logs from the right-hand fork of the creek.

If plaintiff's understanding of the boundary covered by the contract was correct, it appears that the defendant breached the contract. If the defendant's understanding was correct, then the plaintiff breached it.

Upon this theory of ambiguity the court admitted the evidence referred to and so instructed the jury. That was error. The terms of the written contract are not ambiguous. It covered the boundary of land located on the waters of Millstone creek, the timber on which the company had bought from the Consolidation Coal Company, and which was approximately 2½ miles from Millstone Station on the Louisville & Nashville Railroad. The court should have so construed the contract, instead of leaving it to the jury to say what the agreement between the parties was. In the absence of a reformation upon the ground of fraud or mistake, the appellee was bound by the terms of the instrument. White Star Coal Company v. Pursifull, 186 Ky. 703, 217 S. W. 1020; Siler v. White, 190 Ky. 7, 226 S. W. 102. His intention to make a contract covering the timber only on the left-hand fork of the creek could not prevail over the intention clearly manifested by the writing. Harmount & Wolff Tie Company v. Skinner, 232 Ky. 630, 24 S. W. (2d) 263. The plaintiff rested his case entirely upon a breach of that writing filed with his petition, but was permitted to recover upon evidence of breach of a different contract, to-wit, one covering only a part of the boundary described.

Judgment reversed.