## Martin Oil & Gas Co. v. Fyffe et al.

(Decided Dec. 5, 1933.)

COMBS & COMBS and J. B. CLARKE for appellant.
WHEELER & WHEELER for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming in part and reversing in part.

The Martin Oil & Gas Company, a corporation, is appealing from a judgment in favor of J. H. Fyffe and Proctor Fyffe for breach of a drilling contract. The judgment is for $1,000 for each of the two wells mentioned in the contract. The pertinent facts as made to appear from the record are that on Januray 8, 1930, appellant and appellees entered into a written contract, the relevant portions of which read:

"Witnesseth: That the parties hereto, for and in consideration of their mutual covenants hereby

agree as follows: The Contractor agrees to drill two wells for the Owner to the depth of thru the big shale formation unless gas or oil is found in paying quantities at a lesser depth, the owner to decide what volume of gas or oil is paying quantities, in accordance with the specifications hereafter contained, * * *

"The Contractor shall commence the drilling of the first well upon receipt of notice from the owner to do so, said notice to give the date drilling is to be started. After the commencing of the first well the Contractor shall prosecute the work of drilling said well continuously thereafter until said well is completed. Upon receipt of notice from the owner the Contractor shall commence the drilling of the second well immediately after the completion of the first well if the owner desires to do so. * * *

"In case the Owner shall desire to abandon the said well at any time before its completion, he may give notice to the Contractor of their intentions to do so, and thereupon the contractor shall cease further drilling of said well, and shall be entitled to receive payment as above specified for each lineal foot of hole drilled at the time of receipt by him or them of said notice."

The wells were to be drilled upon the Amanda Dingus lease, where prior to the execution of the contract, appellees had drilled a well. After entering into a contract, appellees purchased some necessary equipment for their drilling outfit which was permitted to remain upon the Dingus lease until appellant sold and transferred its lease to the Southeastern Oil Company, another corporation, and the latter had let a drilling contract to others. The Southeastern Oil Company was joined as defendant with appellant and recovery sought against each of them.

The petition merely sets up the contract, the alleged breach thereof, and facts relating to the transfer of the lease, and appellant and its codefendant by answer put in issue the question of liability under the provisions of the contract.

A large volume of proof was taken by deposition relating to the giving of notice as provided in the con-

tract and as to the intention of the parties when the contract was made; but since no fraud or mutual mistake is charged and there is no ambiguity or uncertainty in the language of the contract that would warrant extrinsic evidence to explain its provisions, it will be unnecessary to recite or to consider any of the evidence except such as relates to the alleged breach of contract.

The chancellor's finding that appellees were ready, willing, and able to perform the contract and that they were prevented from so doing by acts of appellant is fully sustained by the evidence. The chancellor found for the Southeastern Oil Company, and by cross-appeal the correctness of the judgment in that respect as well as its denial of right to recover $5,000 the full amount sued for is called in question by appellees.

As the first ground argued for reversal it is urged in effect by counsel for appellant that the contract is unilateral and unenforceable in that appellant was not obligated to do anything so long as the contract remained wholly executory, since it was optional with it whether notice would ever be given appellees to commence the well; that the evidence shows appellant so intended and understood when the contract was prepared and signed. In so far as the second well referred to in the contract is concerned, appellant's contention is not without real merit, but counsel's interpretation of the contract with respect to the first well is not in accord with our views as to the effect to be given the controlling provisions thereof nor in harmony with the prevailing weight of authority.

Counsel cite and rely on the case of Louisville Tobacco Warehouse Company v. Zeigler, 196 Ky. 414, 144 S. W. 899, and a number of cases of like tenor as supporting their theory. While the Zeigler Case and other authorities relied on by counsel give recognition to the general doctrine that a contract to be enforceable must be mutually binding upon all parties thereto and where a contract is unilateral and wholly wanting in the quality of mutuality it is unenforceable, the rule thus enunciated is applied in each instance to the contract under consideration in the particular case, and it will be readily seen from an examination of those authorities that none of the contracts under consideration are sim-

ilar to the one involved in this action in so far as it relates to the drilling of the first well.

When a contract is intended to and does by its terms bind all parties and imposes upon them mutual, reciprocal obligations, the requirement as to the mutuality is satisfied. If this contract is wanting in mutuality, it must as argued by counsel be because of provisions relating to notice and/or the provisions relating to abandonment as set out in the latter part of the quoted provision of the contract.

In construing contracts, courts look to the entire instrument and deduce the intention of the parties from the language employed. Jones v. Riddell, 224 Ky. 245, 5 S. W. (2d) 1077; Sower v. Lillard, 207 Ky. 283, 269 S. W. 330; Fox v. Buckingham, 228 Ky. 176, 14 S. W. (2d) 421. Secret intentions of one of the contracting parties cannot prevail as against the intention expressed by the words of the contract. Harmount & Wolff Tie Company v. Skinner, 232 Ky. 630, 24 S. W. (2d) 263.

When the different provisions of the contract are considered together, the difference in expression with reference to the two wells becomes significant. Manifestly, it was understood and intended by the parties, as evidenced by the provisions of the contract, that appellees would drill at least one well. Its language is susceptible of no other reasonable interpretation, and the contract is not rendered unenforceable because of the provisions that the contractors will not begin drilling until notified to do so by appellant and no limitation is fixed as to the time for giving such notice. The general rule is that in the absence of definite specified time for the performance of a contract or any act to be done in connection with it, the law implies that it will be performed within a reasonable time. United Equipment Co. v. D. T. Bohon Co., 203 Ky. 527, 263 S. W. 27; Miller v. Bradley, 217 Ky. 553, 290 S. W. 319; Fyffe v. Skaggs, 246 Ky. 5, 54 S. W. (2d) 369. But, since the contract provides that drilling of the second well commences immediately after the first well is completed if the owner desires to do so, it is equally apparent that it was wholly optional with appellant whether a second well would be drilled. Whatever else may be the effect of the quoted provision of the contract with reference to the abandonment of the well after the

drilling started, it does not operate to render the contract wholly ineffectual, and it is not necessary to determine under what circumstances or conditions appellant might have abandoned the well when once begun. It cannot now invoke that provision, since by its own act it put it out of the power of appellees to even begin drilling.

Summed up, our conclusion is that the contract contemplated the drilling of one well with the right reserved to appellant to have another drilled on the same terms and conditions if it so desired.

On the one hand, it is argued by appellant that there is no evidence to sustain the chancellor's finding as to profits which would have accrued to appellees if the contract had been performed, while, on the other hand, it is contended by appellees on cross-appeal that the evidence warranted a finding for them for the full sum sought to be recovered. Without going into detail, it is obvious from the evidence as to wells drilled on this and other leases adjacent or near to it that the chancellor's opinion finds substantial support in the evidence, or at least such doubt would remain as to the correctness of the finding as would forbid a disturbance of the judgment.

For the reasons indicated, the judgment on appeal is affirmed in part and reversed in part, with directions to enter judgment for appellees for the sum of $1,000, and on cross-appeal it is affirmed.