## Carhartt Holding Co. et al. v. Mitchell.

(Decided Oct. 8, 1935.)

SHUMATE & SHUMATE and R. R. FRIEND for appellants.

CLARENCE MILLER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

The Carhartt Holding Company, a corporation, hereinafter called the company, instituted this action against Carrie Mitchell and the Union Bank & Trust Company, hereinafter called the bank, alleging in its.

petition, as amended, that on the 15th day of May, 1931, Mrs. Mitchell executed and delivered to the company a note for $1,000 with interest from date; that in order to secure payment of the note, the maker pledged 100 shares of the preferred stock of the Carhartt Overall Company of a par value of $10 per share, the certificate for which was attached to the note; that before the maturity of the note and in order to secure a note to the bank in excess of the sum of $13,000, the note executed by Mrs. Mitchell with the stock certificate attached thereto was pledged as collateral.

It prayed judgment for the amount of the note with interest subject to credit of $35 dividend due on the stock and for a sale of the stock and that the proceeds be applied on the company's indebtedness to the bank and that the bank be required to set up any interest it might have therein.

In addition to traversing the allegations of the petition, Mrs. Mitchell in a second paragraph of her answer as amended admitted that she signed the note referred to in the petition, but with the express agreement and understanding with R. M. Bergman with whom she left same that the execution and delivery thereof was conditioned on the approval of same by her husband, Claude Mitchell, who at the time was absent from the county; that upon the return of her husband shortly after she signed the note she explained to him the condition under which it was signed; that he made an investigation, inquiring of various persons, including H. P. Moore, cashier of the bank, concerning the stock, and the latter advised him that the stock was not of the value represented on its face; that thereupon her husband, acting for her as her agent and pursuant to her instructions, immediately notified R. M. Bergman of her intention and purpose to exercise her right and option to refuse to execute or to deliver same and instructed him to either return or cancel the note; that she believed her instructions had been followed by the cancellation of the note until she was notified by letter that the company was demanding payment thereof. She prayed that the petition be dismissed and that the note be canceled and returned to her and that the stock be transferred to the person entitled thereto.

By answer, counterclaim, and cross-petition, the bank alleged that it was the holder of the note mentioned in the petition and was holding same as collateral

for an obligation of a larger amount from the company and was entitled to the proceeds of the note sued on; that it had possession of the note and the stock certificate referred to in the petition and filed same as exhibits with its pleadings. It made its answer a cross-petition against Mrs. Mitchell and prayed for judgment in the sum of $1,000 with interest from date until paid and that the stock certificate be sold and all sums for which plaintiff sought recovery be paid to it as a creditor on plaintiff's debts to it.

By reply the company and the bank traversed the affirmative allegations of the answer. A trial of the issues resulted in a verdict and judgment for the defendant and Mrs. Mitchell, and the company and the bank are appealing.

It appears in the evidence that appellee's father, who died prior to the time the note was executed, had subscribed for 200 shares of the capital stock of appellant company. R. M. Bergman, a member of the board of directors and treasurer of the company, approached Mrs. Mitchell with the proposition to take the stock or to make arrangements for it. Mrs. Mitchell testified that she told Mr. Bergman that she did not believe her husband wanted the stock because he had had a big reduction in salary; that Bergman said, "You sign the note and if it is not entirely satisfactory with Mr. Mitchell I will destroy your note." That with that understanding she signed it and when her husband returned she told him to go down and see Bergman about it which he did; that this was within a week after she signed the note. Claude Mitchell, husband of appellee, testified that when he found the note had been signed by his wife he went to see Mr. Moore, cashier of the bank, for advice and upon the advice received went at once to Bergman and told him he would not sign the note and wanted it back; that he would not take the stock and had come to notify Bergman that he did not approve of the transaction; that he told Bergman to either return the note or destroy it and Bergman replied, "All right." That he heard nothing further about the matter until July 30, 1934, when Mrs. Mitchell received notice from the company's attorneys that action would be taken against her unless she arranged or did something about the note. H. P. Moore, cashier of the bank, testified that Claude Mitchell came to him for advice in regard to the purchase of the stock in the

company and he advised him not to take it. Bergman testified that Mrs. Mitchell's father had subscribed for stock in the company and that he went to see her about taking some of the stock; that he found her very agreeable and willing to take the stock and she stated she felt like she wanted to do something for the community; that after she signed the note, he stated to her, "Mrs. Mitchell, if Mr. Mitchell does not approve of this you let me know right away and I will give you the note back." The stock certificate was issued on October 23, 1931, and Mr. Bergman testified Mr. Mitchell did not come to see him about the matter until after it had been issued and attached to the note; that when Mr. Mitchell did approach him about the matter he stated to him in substance that he had slept on his rights and it was too late since the stock had already been issued. He further testified that he did not remember whether the note and the stock had at that time been pledged as collateral to the bank.

Moore was recalled and stated that the loan to the company referred to in the pleading was made November 21, 1931, and, as he recalled, the note for stock was attached as collateral at that time.

In rebuttal Claude Mitchell testified that when he went to see and told Bergman that he did not approve the execution of the note the latter did not tell him it was too late.

It is first argued in effect by counsel for appellant company that delivery of the note to Bergman, an officer of the corporation, was delivery to the company itself, and that upon delivery to him, the note became effective, notwithstanding any agreement or understanding between appellee and Bergman that it was not to become effective unless approved by appellee's husband.

Section 3720b-16, Kentucky Statutes, relating to negotiable instruments, provides in effect that contracts on negotiable instruments are incomplete and revokable until delivery of the instrument for the purpose of giving effect thereto; that as between the immediate parties, and as regards a remote party other than the holder in due course, the delivery to be effectual must be made by or under the authority of the party making, drawing, accepting, or indorsing the instrument as the case may be; and, in such case, the delivery may be shown

to be conditional, or for a special purpose, and not for the purpose of transferring the property in the instrument.

It is further contended by counsel for appellant that appellant bank was a holder in due course and was therefore entitled to the relief sought, and, further, that the court erred in instructing the jury. The only instruction given reads:

"The Court instructs the jury that if they believe from the evidence that the alleged note sued on was signed and delivered by defendant, Carrie M. Mitchell to R. B. Bergman, upon the condition that same was to be ratified by her husband, Claude M. Mitchell, and you further believe from the evidence that same was not ratified by him and the said R. M. Bergman was so notified within a reasonable time, then the law is for the defendant and you shall so find; unless you so believe you will find for plaintiff, the Carhartt Holding Company."

Since the case must be reversed on account of error in instruction, it may be said in passing to that feature of the case that the bank does not allege sufficient facts to show that it was a holder in due course and it is to be doubted if the proof is sufficient to establish that it was; however, since there may be a reformation of the pleadings on a return of the case and the proof on that point may be materially different, we deem it unnecessary to enter into further discussion of that ground.

When no time is fixed for the performance of a contract or of any act or duty of either of the parties under it, the law requires that the performance of the contract or the act or duty shall be within a reasonable time after the execution of the contract. Kirkpatrick v. Lebus, 184 Ky. 139, 211 S. W. 572, and cases therein cited.

Section 3720b-192, Kentucky Statutes, provides:

"In determining what is a 'reasonable time' or an 'unreasonable time' regard is to be had to the nature of the instrument, the usage of trade or business [if any] with respect to such instruments, and the facts of the particular case."

And, generally speaking, a "reasonable time" for the performance of the conditions in a contract is a question of fact to be determined by all the circum-

stances of the case. No fixed rule can be laid down. Eastern Kentucky Mineral & Timber Co. v. Swann-Day Lumber Co., 148 Ky. 82, 146 S. W. 438, 46 L. R. A. (N. S.) 672. To the same effect, see Asher v. Asher, 141 Ky. 268, 132 S. W. 415; Killebrew v. Murray, 151 Ky. 345, 151 S. W. 662.

While courts have refrained from attempting to lay down a fixed rule for determining what is a reasonable time, the term has been generally defined as such time as may be necessary in the circumstances of the case for a reasonably prudent and diligent person to do what the contract or duty requires should be done, having due regard for the rights and possibility of loss to the other party. Citizens' Bank Bldg. v. L. & E. Wertheimer, 126 Ark. 38, 189 S. W. 361, Ann. Cas. 1917E, 520; Dietrich v. United States Shipping Board Emergency Fleet Corporation (C. C. A.) 9 F. (2d) 733; 6 Words and Phrases, Third Series, p. 577.

In Kirkpatrick v. Lebus, supra, it is said:

"The rule is equally fundamental that what is a reasonable time is to be determined by the facts and circumstances of each case, and that, where the facts are undisputed, it is a question of law for the court."

Here, there is a dispute as to when Mr. Mitchell notified Mr. Bergman that he did not approve or ratify the transaction concerning the purchase of the stock and the execution of the note by his wife and demanded a cancellation or return of the note. The evidence for appellee fixes the time as within one week after the execution of the note on May 15, 1931, and the evidence of Mr. Bergman fixes the time as after October 23, 1931, when the stock certificate was issued.

The instruction left it to the jury to determine whether Mr. Mitchell gave the notice that he did not approve or ratify the acts of his wife within a reasonable time. According to the evidence, Mr. Mitchell returned within a few days after the note was executed and there is no reason shown why he could not have ascertained all the facts and have notified Mr. Bergman or appellant company promptly of his disapproval of the transaction. We conclude that after he was acquainted with the facts two weeks would have afforded ample and reasonable time for him to have notified Mr. Bergman or the company of his disapproval of his

wife's transaction and that any notice after such period was not within a reasonable time and an instruction to that effect should have been given.

Wherefore the judgment is reversed for proceedings consistent with this opinion.