RENDERED: APRIL 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2023-CA-0914-MR

PREMIER SURGERY PROPERTIES, LLC            APPELLANT

           APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE MITCH PERRY, JUDGE
           ACTION NO. 22-CI-006282

JEWISH HOSPITAL AND
ST. MARY'S HEALTHCARE, INC.            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ECKERLE AND KAREM, JUDGES.

ECKERLE, JUDGE: Two, sophisticated parties negotiated a purchase and sale agreement regarding two lots of real property. Appellant, Premier Surgery Properties, LLC ("Premier"), purchased the lots and constructed a surgery center on one of them. The other lot remains undeveloped and is the subject of this dispute. Premier claims the seller, Appellees, Jewish Hospital and St. Mary's

Healthcare, Inc. (the "Hospital"), have not complied reasonably and timely with their obligation to construct a permanent, drivable lane that would provide access to the undeveloped lot. The Hospital agrees that it has not constructed the lane. Nonetheless, it claims the case should be dismissed because there is allegedly no need to impute a reasonable timeline for a permanent lane's construction as the contract provides Premier the right to construct a temporary, drivable lane. The Trial Court granted the Hospital's motion to dismiss, holding that it would not read any reasonable timeline into an arm's-length contract between two, sophisticated parties that negotiated a means of lot access. Premier appealed. Having reviewed the record and the relevant law, we agree with the Trial Court. Hence, we affirm.

## BACKGROUND

Premier purchased, via a land swap, Lots 4-1 and 4-3 on Terra Crossing Boulevard, Louisville, Jefferson County, Kentucky, from the Hospital pursuant to a Purchase and Sale Agreement dated June 11, 2011. Premier arranged for a surgery center to be constructed on Lot 4-1, and the construction is complete. Premier left Lot 4-3 undeveloped, claiming that the Hospital has not yet constructed a permanent, drivable lane to provide access to the lot. A review of the approved, minor subdivision plan shows that Lot 4-1 has access to Terra Crossing Boulevard via an existing curb cut, while Lot 4-3 has no such access and requires access to Terra Crossing Boulevard via a to-be-developed drivable lane. That

currently non-existing lane would also provide access to substantial, undeveloped acreage that constitutes the remainder lot. Certainly aware of this access issue during their negotiations, Premier and the Hospital provided agreements and reciprocal easements in a Special Warranty Deed dated March 7, 2012, conveying Lots 4-3 and 4-1 (the "Contract"), to wit:

2. [The Hospital], its successors and assigns, shall provide for the design and construction of the permanent driveways, sidewalks, and other improvements in the Easement Area, at [the Hospital's] sole cost and expense (collectively the "Drive Lanes"). In the event [the Hospital] has not constructed the Drive Lanes prior to the development of Lot 4-3, [Premier] shall have the right to design and construct a temporary driveway, sidewalks, and other improvements in the Easement Area at [Premier's] sole cost and expense (collectively, the "Temporary Drive Lanes"). [The Hospital] shall submit the design plans for the Drive Lanes to [Premier] for review and approval prior to construction, which approval shall not be unreasonably withheld. Said plans shall provide for improvements to the property line of Lot 4-3 and, if applicable, Lot 4-1. [The Hospital] shall obtain all governmental approvals necessary for the construction of the Drive Lanes, if required, and [the Hospital] shall cooperate in that regard. [Premier] shall obtain all governmental approvals necessary for the construction of the Temporary Drive Lanes, if required. Immediately after construction of the Temporary Drive Lanes, [Premier] shall use commercially reasonable methods to restore [the Hospital's] Property to its original condition.

It does not appear that either party has constructed permanent or temporary, drivable lanes. Instead, Premier has requested that the Hospital

construct the permanent lanes.  The Hospital has refused, resulting in Premier's filing of a Complaint alleging breach of the Contract.  Premier claims that the Hospital failed during the previous 11 years to construct the permanent, drivable lanes; and the Hospital agrees with this point.  However, the Hospital moved to dismiss the Complaint, arguing that the Contract has not been breached because Premier has the option of constructing temporary, drivable lanes, and there is no express timeline in the Contract for the Hospital to construct permanent, drivable lanes.  Premier argues that a reasonable timeline should be read into the Contract as a matter of law.  The Trial Court below granted the motion to dismiss, noting that the Contract's terms were unambiguous and provided Premier a means of access; thus, no reasonable timeline should be added to the Contract's terms. Premier appealed.

Premier argues three errors by the Trial Court on appeal:  (1) it did not apply the proper standard; (2) it should have read a reasonable time period into the Contract; and (3) it conflated Premier's right to construct temporary lanes into a duty to perform.  The Hospital responds to each of these issues and further asserts that Premier's claim should fail because it has not proven any prejudice by the Hospital's failure to act.  We begin with the standard of review.

## ANALYSIS

The Trial Court dismissed this case pursuant to a CR[1] 12.02 motion. "Under CR 12.02 a court should not dismiss for failure to state a claim unless the pleading party appears not to be entitled to relief under any state of facts which could be proved in support of his claim." *Weller v. McCauley*, 383 S.W.2d 356, 357 (Ky. 1964). "In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law." *James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002). "Accordingly, 'the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true.'" *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (quoting *Morgan v. Bird*, 289 S.W.3d 222, 226 (Ky. App. 2009)). "Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?" *James*, 95 S.W.3d at 884.

Appellate review of orders of dismissal is *de novo*. *Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, 352 S.W.3d 594, 596 (Ky. App. 2011) (citing *Hamilton-Smith v. Commonwealth*, 285 S.W.3d 307 (Ky. App. 2009)). We "owe[] no deference to a trial court's determination[.]" *Fox*, 317 S.W.3d at 7.

---

[1] Kentucky Rules of Civil Procedure.

Accordingly, Premier's first allegation of error is a *non sequitur*. Whether the Trial Court applied the proper standard is irrelevant to our *de novo* review that owes no deference to the Trial Court's determination.

Premier's second and third allegations of error address the substance of this appeal, though we find neither warrants reversal. Distilled down to the basics, the question before us is whether a reasonable time period should be read into the Contract's terms regarding the permanent, drivable lane's construction.

Kentucky law is clear regarding timelines that are applicable in the absence of contract terms. It holds that where "the contract was for a definite amount of work . . ." and "there is no provision in such a contract as to the time for performance, the general rule is that the contract must be performed within a reasonable time." *Stephens v. Horn*, 314 Ky. 752, 754, 236 S.W.2d 953, 954 (1950) (citing *Martin Oil & Gas Co. v. Fyffe*, 251 Ky. 517, 65 S.W.2d 686 (1933), and *Carhart Holding Company v. Mitchell*, 261 Ky. 297, 87 S.W.2d 360 (1935)). *See also Liggett Group, Inc. v. Commonwealth*, 232 S.W.3d 559 (Ky. App. 2007).

And yet here, this legal principle is inapplicable because there is no definitiveness in the Contract as to the amount of work that should be performed. The Contract expressly permits two possible outcomes: (1) the Hospital constructs permanent lanes of access while Premier waits to develop Lot 4-3; or (2) Premier constructs temporary lanes to develop Lot 4-3 on its own timeframe. In other

-6-

words, one cannot look at the Contract and say, definitively, that the Hospital or Premier should be the first to perform. Contracts that require courts to add a reasonable time requirement involve definite performance. *See, e.g.*, *United Equipment Co. v. D.T. Bohon Co.*, 203 Ky. 527, 263 S.W. 27 (1924) (adding reasonable timeframe to a contract to construct sprinkler system); *Miller v. Bradley*, 217 Ky. 553, 290 S.W. 319 (1927) (adding reasonable timeframe to a contract to furnish water for drilling). Here, the Contract is not definitive about which party should be the first to perform the building of any drivable lanes.

Premier argues that one cannot come to this conclusion because the contract *requires* the Hospital to perform, but it only *permits* Premier to perform. This argument misses the central issue: Does the Contract include a singular, definitive act to be performed? The answer to this question must be in the negative, as the parties negotiated express terms that permitted each an alternate path to control the development on their own, respective timelines.

Premier further posits that if the Courts decline to impute a non-negotiated, allegedly reasonable timeline for the Hospital to construct the permanent lanes, then the Hospital would never perform. But Premier fails to account for its own reason for neglecting to assert this point in contact negotiations between parties at arm's length. It likewise ignores here the Hospital's obvious reason for not wanting to include a definite timeline, *i.e.*, simple, economic

advantage. This profit motive is the same reason Premier has to construct the temporary lanes. Once the Hospital finds a valuable use for the remainder property, it must construct permanent lanes of access pursuant to the Contract's terms. In the same way, Premier has an economic incentive to construct temporary lanes solely for its own access to its adjacent property if it finds a profitable use for the lot that overcomes the additional, construction costs.

Simply put, had Premier wanted permanent lanes constructed within a time certain, it could have and would have negotiated those terms when purchasing the properties. We will not read into this Contract anything more than its express and unambiguous terms, *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966) ("In the absence of ambiguity a written instrument will be enforced strictly according to its terms."), especially in an arm's-length transaction between sophisticated parties, *cf. Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 650 (Ky. 2007) (noting most exculpatory clauses are enforced in arm's-length transactions between sophisticated parties).

Accordingly, the Trial Court did not err by granting the motion to dismiss. Having so found in the Hospital's favor, we need not address its ancillary issues.

**CONCLUSION**

Because the Contract unambiguously provides that either party may construct drivable lanes depending on its desire to develop its lot, there is no definite performance regarding which we may construct a reasonable timeframe. The Trial Court properly granted the Hospital's motion to dismiss. Accordingly, we AFFIRM.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Casey L. Hinkle
Louisville, Kentucky

BRIEF FOR APPELLEE:

Christopher W. Brooker
Matthew R. Palmer-Ball
Louisville, Kentucky